WILLIAM F. TARANTINO (CA SBN 215343)
WTarantino@mofo.com
KWAN PARK (SBN 306719)
BPark@mofo.com
ROBERT SANDOVAL (SBN 311032)
RSandoval@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

TRITIA M. MURATA (CA SBN 234344)
TMurata@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, California  90017-3543
Telephone: 213.892.5200
Facsimile: 213.892.5454

Attorneys for Plaintiff
CALIFORNIA GROCERS ASSOCIATION

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA GROCERS ASSOCIATION, a California non-profit organization,<br><br>                    Plaintiff,<br><br>          v.<br><br>CITY OF LONG BEACH, a charter municipality,<br><br>                    Defendant. | Case No.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiff California Grocers Association ("Plaintiff" or "CGA") brings this action against Defendant City of Long Beach ("Defendant" or "City") and alleges as follows in this Complaint for declaratory and injunctive relief:

# **INTRODUCTION**

1.      At the onset of the COVID-19 pandemic, the State of California and various counties, cities, and other regulatory bodies throughout the state issued a series of emergency orders and regulations in an effort to stem the spread of the virus and protect the public health and welfare. These early efforts—aimed at balancing the public's basic economic and social needs with a desire to minimize COVID morbidity and mortality—came at a steep price, especially for essential businesses, and the millions of employees and members of the public who rely on them.

2.      California grocers have stayed open to serve their communities since day one. They understand that defeating this pandemic requires extraordinary measures and have eagerly committed themselves to the task. Since March of 2020, California grocers of all sizes have established rigorous and science-driven safety measures, often at great expense, to adapt to this new environment and ensure that they operate in a safe and hygienic manner in order to help slow the spread of the virus, and protect their workers and the public.

3.      Grocers have implemented comprehensive safety measures for customers and employees and compensated frontline grocery employees for their extra efforts in a difficult environment.  Grocers have provided "appreciation pay," "hero bonuses," and "thank you pay" to reward their associates.  Additionally, in terms of employee support, grocers have offered COVID-19 testing to employees and provided emergency leave and paid time off to those affected by the virus or experiencing symptoms.

4.      For worker safety, grocers have provided supplies to employees including face masks and protective gear in addition to encouraging employees to stay home if feeling ill and implementing paid leave policies. Plexiglas shields, physical distancing measures, and contactless payment and delivery services have been implemented to protect employees.  Some of California's largest grocers such

2

as Kroger and Albertsons joined the United Food and Commercial Workers International union just last year to urge federal and state governments to designate grocery store employees as emergency first responders.

5.    Yet on January 19, 2021, the City passed the "Premium Pay for Grocery Workers Ordinance" ("Ordinance") which requires employers to pay a $4 per hour premium on whatever the employees existing wage is at the time of enactment, regardless of any existing bonus, incentive, or hero pay program that the employer may have in place.[1]

6.    The Ordinance unreasonably singles out specific employee classes in specific grocers, while ignoring employers or essential frontline workers outside the grocery industry.  Plaintiff seeks a declaration that the law is invalid and unconstitutional, and an injunction halting any action to enforce the Ordinance on the grounds that it (1) is preempted by federal law regulating collective bargaining and unfair labor practices; (2) violates the equal protection and contracts clauses of the U.S. and California constitutions.

## JURISDICTION AND VENUE

7.    This Court has jurisdiction over the subject matter of this suit pursuant to 28 U.S.C. §1331, as the Plaintiffs' claims arise under federal laws; namely, the National Labor Relations Act, 29 U.S.C. §141 *et seq.*; Article VI of the U.S. Constitution which designates the Constitution and Laws of the United States as the supreme law of the land; and the equal protection clause and contracts clause of the U.S. Constitution.

---

[1] While the Ordinance is designated as an emergency ordinance, the Council failed to conduct a separate roll call on the emergency as required by the Long Beach City Charter sec. 211 and Cal. Gov't Code §36937(b)(allowing immediate effect for "the immediate preservation of the public peace, health or safety").  The Council attempted to enact the Ordinance as both an emergency and regular ordinance simultaneously, creating significant confusion as to its effective date.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
sf-4409829

8.      This Court has supplemental jurisdiction over this subject matter pursuant to 28 U.S.C. §1367(a), as the Plaintiffs' claims arising under the California Constitution are so closely related to the federal question claims that they form part of the same case or controversy under Article III of the U.S. Constitution.

9.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(b), as this Court is sited in the federal judicial district where the events giving rise to the CGA's claims have occurred, are now occurring, and will occur in the future if not prevented through actions of this Court. CGA's members are situated in this district and are and will continue to be adversely affected by the irreparable harms sought to be remedied and prevented by this Court's action upon this Complaint.

## PARTIES

10.      Plaintiff California Grocers Association has served as the voice of the state's grocery community for over 120 years. As a nonprofit, statewide trade association, CGA's membership is comprised of over 300 retailers and approximately 150 grocery supply companies. As part of its mission, CGA has advocated on behalf of its member retailers on important policy issues. Headquartered in Sacramento, California, CGA brings this action on behalf of its members operating stores in the City of Long Beach.

11.      Defendant, City of Long Beach, is and at all relevant times has been a public entity duly organized and existing under and by virtue of the laws of the State of California as a charter municipality.

## FACTUAL BACKGROUND

12.      California Grocers Association pursues this action on behalf of its members who are grocery store employers ("Members") because the employers who operate grocery stores in Long Beach will suffer a direct and adverse impact from the application of the Ordinance, and thus would have standing to pursue these claims in their own right.  The policy and legal interest CGA seeks to protect is at the core of Plaintiff's mission, and the injunctive and declaratory relief sought

4

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

sf-4409829

does not require the participation of individual members.

13. Several Members operate grocery stores in the City that employ members of a specific labor union, United Commercial Food Workers International, Local 324 ("UCFW 324"), and those employees are parties to collective bargaining agreements that govern the terms of their employment, including wage scales. Other Members operate grocery stores that do not employ unionized workers, but those employees are free to organize and select a collective bargaining unit, should they choose to do so.

14. Members have suffered or will continue to suffer economic and non-economic harm as a result of the enactment of the Ordinance, and its foreseeable consequences on union organizing, ongoing collective bargaining, and labor relations for both unionized and non-union grocery stores in the City of Long Beach. Members are required to alter the wage scales and other terms of their existing collective bargaining agreements, regardless of any additional hero pay, bonuses, or other non-monetary compensation provided to their employees to ease the burden of the COVID-19 pandemic.

15. The Ordinance also prohibits an employer from taking any action related to the Ordinance that could impact any employee's "earning capacity," effectively preventing the employer from taking any action to control labor costs, despite the government-mandated wage increases. Failure to immediately comply with the Ordinance will expose the Members to civil sanctions, loss of goodwill, and other irreparable harm.

16. UCFW 324 sponsored this Ordinance. Both UCFW 324 and the national UCFW organization have been active in promoting and negotiating with employers for hero pay. Over the last two months, the national UCFW has made numerous statements in the press that hazard pay bonuses and other compensation are appropriate topics for bargaining, even announcing recent "victories" in negotiations with other grocery retailers in California, New Jersey, New York, and

1   around the country where employers have agreed to pay supplemental hazard pay

2   premiums, some of which are being paid currently. For example, CGA Member

3   Stater Brothers has one location in Long Beach, and agreed in December to pay

4   $2/hour as a hazard pay premium to certain employees.

5           17.    By design, the Ordinance picks winners and losers.  It singles out

6   large grocery companies with unionized workforces (i.e., UCFW 324's members)

7   without providing any reasonable justification for the exclusion of other employers

8   or frontline retail workers. The Ordinance arbitrarily and improperly targets certain

9   grocery store businesses in Long Beach for disparate treatment while not requiring

10  the same commitments from similarly situated businesses, or conferring *any*

11  benefits on similarly situated employees.  There is no support for any of the City's

12  statements that the Premium Pay will protect public health, address economic

13  insecurity, and promote job retention.

14                          **THE ORDINANCE**

15          18.    The Premium Pay for Grocery Workers Ordinance codified in

16  Chapter 5.91 in the Long Beach Municipal Code is attached hereto as **Exhibit A**.  It

17  applies to "grocery stores" which is defined as a store that devotes seventy percent

18  (70%) or more of its business to retailing a general range of food products, which

19  may be fresh or packaged.  Section 5.91.020.  Specifically, the ordinance applies to

20  those grocery store "hiring entit[ies]" that employ three hundred (300) or more

21  grocery workers nationally and employ more than fifteen (15) employees per

22  grocery store in the City of Long Beach.  Section 5.91.040.

23          19.    Grocery stores meeting this minimum threshold of employees are

24  required to provide each employee with premium pay consisting of an additional

25  four dollars ($4.00) per hour for each hour worked.  Section 5.91.050.  The

26  Ordinance is set to expire in 120 days.  *Id.*

27          20.    The Ordinance prohibits reducing a grocery employee's

28  compensation or limiting a grocery employee's earning capacity unless the

6

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

sf-4409829

1  employer can prove the decision would have happened in absence of the Ordinance.
2  Section 5.91.060.

3      21.   Grocery stores are required to provide a notice of rights established
4  by the Ordinance.  Section 5.91.070.

**FIRST CAUSE OF ACTION**

**Declaratory and Injunctive Relief**

**(NLRA Preemption)**

8      22.   CGA incorporates herein by this reference the allegations contained
9  in Paragraphs 1 through 21, inclusive.

10     23.   Enacted in 1935, the National Labor Relations Act ("NLRA"), as
11  amended, 29 U.S.C. § 151, *et seq*., creates a uniform federal body of law governing
12  union organizing, collective bargaining, and labor-management relations applicable
13  to employers engaged in interstate commerce.  It established various rules
14  concerning collective bargaining and defined a series of banned unfair labor
15  practices, including bans on interference with the formation or organization of labor
16  unions by employers. The NLRA does not apply to certain workers, including
17  supervisors, managerial employees and confidential employees – all categories
18  specifically excluded from the Ordinance.

19     24.   The NLRA prohibits state and local regulation of conduct that
20  Congress intended to be left to be controlled by the free-play of economic forces.
21  Legislation that interferes with the "balanced state of collective bargaining" is
22  preempted by the NLRA.  *See Machinists v. Wisconsin Employment Relations*
23  *Comm'n*, 427 U.S. 132 (1976).

24     25.   In particular, the NLRA preempts any and all state and local
25  enactments that, by design or consequence, regulate or interfere with the then-
26  existing balance of economic power between labor and management with respect to
27  zones of activity that, under federal labor law, are intended to be left to the free play
28  of economic forces. Laws subject to NLRA preemption include laws that interfere

with or attempt to regulate the economic tools available to labor or management during the course of collective bargaining or that otherwise interfere with the collective bargaining process, such as those that alter the parties' rights and economic alternatives during collective bargaining, or the processes and procedures utilized for union organizing.

26. Application of the Ordinance to the activities of the Long Beach Members unequivocally intrudes upon zones of activity in the areas of labor relations, union organizing, and collective bargaining that is reserved under federal labor law and policy to the free play of economic forces. The Ordinance establishes premium pay standards that, by design or consequence, empower the UFCW or other collective bargaining units to secure a wage rate they could not otherwise have obtained from the employer at a unionized or non-union grocery store. This undermines the collective bargaining process and disrupts the process of union organizing.

27. While the City has the ability to enact ordinances to further the health and safety of its citizens, the Ordinance here bears no relation to those goals. Local minimum wage laws, for example, seek to lessen the burden on public welfare services. This ordinance is not a minimum labor standard. It is a mandatory hourly bonus for a specific group of workers, regardless of the wage negotiated in the current collective bargaining agreements or other employment agreements.

28. The Ordinance is preempted by the NLRA as it regulates zones of activity that Congress intentionally left to be controlled by the free play of economic forces.

29. The City's application and enforcement of the Ordinance will cause CGA's Members to suffer irreparable harm for which they have no adequate remedy at law, even if the Ordinance is later declared by this Court to be void and unenforceable. This claim is also brought pursuant to 42 U.S.C. §1983 and §1988(b).

30.    CGA is entitled to judgment declaring the Ordinance to be void and unenforceable under the Supremacy Clause of the U.S. Constitution and equitable and injunctive relief to prevent the City of Long Beach or any other private enforcer from attempting to enforce or give effect to the Ordinance.

## SECOND CAUSE OF ACTION

### Declaratory and Injunctive Relief

### (Equal Protection Clause of the United States Constitution)

31.    CGA incorporates herein by this reference the allegations contained in Paragraphs 1 through 30, inclusive.

32.    CGA hereby seeks declaratory, equitable and injunctive relief to prevent the City from depriving Plaintiff's members of the protections afforded to them under the Equal Protection Clause of the U.S. Constitution, which guarantee each and all of them equal protection of the laws.  (U.S. Const., Amend. XIV, § 1). This claim is also brought pursuant to 42 U.S.C. §1983 and §1988(b).

33.    The Equal Protection Clause requires that persons who are similarly situated receive like treatment under the law, and that statutes may single out a class for distinction only if that classification bears a rational relationship to the purpose of the statute.  As such, the City may not irrationally single out one class of individuals for discriminatory treatment.

34.    The Ordinance improperly singles out certain grocery store businesses in Long Beach for disparate treatment while not requiring the same treatment of similarly situated businesses.  More importantly, the ordinance implicates the Members' fundamental right to be free from unreasonable governmental interference with their contracts, specifically their collective bargaining agreements and other employment agreements.

35.    The stated purpose of the Ordinance, namely, to protect public health, address economic insecurity, and promote job retention during the COVID-19 emergency by requiring grocery stores to provide premium pay is not rationally

9

related to the discriminatory treatment of CGA's Members.  No significant and legitimate public purpose exists for the Ordinance.  The City's stated objectives are merely an attempt to impose a public policy rationale on interest-group driven legislation for labor unions and, in particular, for UFCW 324.

36.     By virtue of the foregoing, application of the Ordinance to the CGA's Members within the City violates the equal protection guarantees of the U.S. Constitution.

37.     The City's application and enforcement of the Ordinance will cause Plaintiff's members to suffer irreparable harm for which they have no adequate remedy at law, even if the Ordinance is later declared by this Court to be void and unenforceable.

## THIRD CAUSE OF ACTION

### Declaratory and Injunctive Relief

### (Equal Protection Clause of the California Constitution)

38.     CGA incorporates herein by this reference the allegations contained in Paragraphs 1 through 37, inclusive.

39.     CGA hereby seeks declaratory, equitable and injunctive relief to prevent the City from depriving CGA's members of the protections afforded to them under the Equal Protection Clause of the California Constitution, which like the U.S. Constitution, guarantees each and all of them equal protection of the laws. (Cal. Const., Art. I § 7.)

40.     For the same reasons set forth in Paragraphs 31 through 37 above, the Ordinance violates the Equal Protection Clause of the California.  Such application will cause CGA's Members to suffer irreparable harm for which they have no adequate remedy at law.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

sf-4409829

## **FOURTH CAUSE OF ACTION**

### **For Declaratory and Injunctive Relief**

### **(Contracts Clause of the U.S. Constitution)**

41.    CGA incorporates herein by this reference the allegations contained in Paragraphs 1 through 40, inclusive.

42.    CGA hereby seeks declaratory, equitable and injunctive relief to prevent the City from depriving CGA's Members of the protections afforded to them under the Contracts Clause of the U.S. Constitution, which provides in pertinent part that: "No State shall . . . pass any . . . Law impairing the Obligation of Contracts . . . ." (U.S. Const., Art. I, § 10, cl. 1).  The Contract Clause imposes limits upon the power of a State, and Municipalities operating under the color of State law, to abridge existing contractual relationships, even in the exercise of its otherwise legitimate police power.

43.    The Ordinance substantially interferes with Members' contracts, including its collective bargaining agreements with its employees, without any significant or legitimate public purpose. The City's stated objectives are to protect public health, address economic insecurity, and promote job retention.  None of these justifications support this measure, because the City's stated objectives are merely an attempt to impose a public policy rationale on interest-group driven legislation for labor unions and, in particular, for UFCW.

44.    Even if the City could show a significant and legitimate public purpose behind the regulation, the substantial impairment to the Members' contractual rights and obligations (i.e., the terms of the Members' existing collective bargaining agreements) are neither reasonable nor necessary to fulfill any such public purpose.

45.    By virtue of the foregoing, application of the Ordinance to CGA's members constitutes a substantial and unconstitutional impairment of those members existing contractual relationships that will cause them to suffer irreparable

11

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

sf-4409829

harm for which they have no adequate remedy at law.

## FIFTH CAUSE OF ACTION

### Declaratory and Injunctive Relief

### (Contracts Clause of the California Constitution)

46.     CGA incorporate herein by this reference the allegations contained in Paragraphs 1 through 45, inclusive.  Plaintiffs hereby seek declaratory and injunctive relief to prevent the City from violating, and continuing to violate, the Contract Clause of the California Constitution, which provides in pertinent part that: "A ... law impairing the obligation of contracts may not be passed." (Cal. Const., Art. I, § 9.)

47.     Like the Federal Contracts Clause, the California Contracts Clause also imposes limits upon the State of California, and its municipalities, to abridge existing contractual relationships, even in the exercise of its otherwise legitimate police power.  For the same reasons set forth in Paragraphs 41 through 45 above, application of the Ordinance to CGA's members within the City constitutes a substantial and unconstitutional impairment of those members existing contractual relationship in violation of the California Contract Clause. Such application will cause those members to suffer irreparable harm for which they have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

1.     On the first cause of action, a judgment declaring that the Ordinance, as well as any act taken in furtherance of the Ordinance by any person, is preempted by the National Labor Relations Act, and its implementing regulations and guidance, and are therefore void and unenforceable, and entering a preliminary and permanent injunction enjoining the City from enforcing or taking any action under the Ordinance;

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

sf-4409829

1     2.     On the second and third causes of action, enter a judgment declaring

2   that the Ordinance, as well as any act taken in furtherance of the Ordinance by any

3   person, violate state and federal equal protection guarantees, and are therefore void

4   and invalid, and entering a preliminary and permanent injunction enjoining the City

5   from enforcing or taking any action under the Ordinance;

6     3.     On the fourth and fifth causes of action, enter a judgment declaring

7   that the Ordinance, as well as any act taken in furtherance of the Ordinance by any

8   person, violate the contracts clauses of the state and federal constitution, and are

9   therefore void and invalid, and entering a preliminary and permanent injunction

10  enjoining the City from enforcing or taking any action under the Ordinance;

11    4.     For an award of attorneys' fees and costs of suit herein pursuant to

12  California Code of Civil Procedure § 1021.5, 42 U.S.C. §1988, or any other

13  applicable law; and

14    5.     For such other and further relief as the Court may deem just and

15  proper.

16

17  Dated:   January 20, 2021          MORRISON & FOERSTER LLP

18

19

20                        By: _____

21                            William F. Tarantino

22                            Attorneys for Plaintiff
                             CALIFORNIA GROCERS
23                            ASSOCIATION

24

25

26

27

28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
sf-4409829

ORDINANCE NO.

AN ORDINANCE OF THE CITY COUNCIL OF THE CITY OF LONG BEACH AMENDING THE LONG BEACH MUNICIPAL CODE BY ADDING CHAPTER 5.91, RELATING TO GROCERY WORKERS IN LONG BEACH, AND ESTABLISHING LABOR STANDARDS REQUIREMENTS FOR PREMIUM PAY FOR GROCERY WORKERS WORKING IN LONG BEACH; DECLARING THE URGENCY THEREOF; AND DECLARING THAT THIS ORDINANCE SHALL TAKE EFFECT IMMEDIATELY

WHEREAS, the new coronavirus 19 (COVID-19) disease is caused by a virus that spreads easily from person to person and may result in serious illness or death, and is classified by the World Health Organization (WHO) as a worldwide pandemic; and

WHEREAS, COVID-19 has broadly spread throughout California and remains a significant health risk to the community, especially members of our most vulnerable populations; and

WHEREAS, the World Health Organization has declared that COVID-19 is a global pandemic, which is particularly severe in high risk populations such as people with underlying medical conditions and the elderly, and the WHO has raised the health emergency to the highest level, requiring dramatic interventions to disrupt the spread of this disease; and

WHEREAS, on March 4, 2020, California Governor Gavin Newsom proclaimed a state of emergency in response to new cases of COVID-19, directing state agencies to use all resources necessary to prepare for and respond to the outbreak; and

WHEREAS, on March 4, 2020, the City of Long Beach Public Health Office issued orders temporarily shutting down restaurants, bars, and other entertainment and

OFFICE OF THE CITY ATTORNEY
CHARLES PARKIN, City Attorney
411 W. Ocean Boulevard, 9th Floor
Long Beach, CA 90802

1

food establishments, except for take-out food; and

WHEREAS, on March 10, 2020, the City Council of the City of Long Beach proclaimed a civil emergency in response to new cases of COVID-19, authorizing the City Manager to exercise the emergency powers necessary to take extraordinary measures to prevent death or injury of persons and to protect the public peace, safety and welfare, and alleviate damage, loss, hardship or suffering; and

WHEREAS, on March 19, 2020, California Governor Gavin Newsom issued a "Stay Home – Stay Healthy" proclamation closing all non-essential workplaces, requiring people to stay home except to participate in essential activities or to provide essential business services, and banning all gatherings for social, spiritual, and recreational purposes.  In addition to healthcare, public health and emergency services, the "Stay Home – Stay Healthy" proclamation identified grocery stores as essential business sectors critical to protecting the health and well-being of all Californians and designated their workers as essential critical infrastructure workers; and

WHEREAS, on March 24, 2020, in order to mitigate the effects of COVID-19 within the City of Long Beach, the Long Beach Health Officer issued the "Safer at Home" Order to control the affects and spread of COVID-19 by closing all non-essential workplaces, requiring people to stay home except to participate in essential activities or to provide essential business services, and banning all gatherings for social, spiritual, and recreational purposes.  In addition to healthcare, public health and emergency services, the "Safer at Home" Order identified grocery stores as essential business sectors critical to protecting the health and well-being of all Californians and designated their workers as essential critical infrastructure workers; and

WHEREAS, on December 3, 2020, California Governor Gavin Newsom extended the "Stay Home – Stay Healthy" proclamation; and

WHEREAS, on December 3, 2020, in order to mitigate the effects of COVID-19 within the City of Long Beach, the Long Beach Health Officer extended the "Safer at Home" Order to control the affects and spread of COVID-19; and

OFFICE OF THE CITY ATTORNEY
CHARLES PARKIN, City Attorney
411 W. Ocean Boulevard, 9th Floor
Long Beach, CA 90802

2

OFFICE OF THE CITY ATTORNEY
CHARLES PARKIN, City Attorney
411 W. Ocean Boulevard, 9th Floor
Long Beach, CA 90802

1  WHEREAS, as of January 5, 2021, the World Health Organization Situation
2  Report reported a global total of 86,833,481 cases of COVID-19, including 1,875,460
3  deaths; California reported 2,490,000 cases of COVID-19, including 27,038 deaths; and
4  Long Beach reported 35,664 cases of COVID-19, including 420 deaths; and

5  WHEREAS, grocery stores are essential businesses operating in Long
6  Beach during the COVID-19 emergency making grocery workers highly vulnerable to
7  economic insecurity and health or safety risks; and

8  WHEREAS, grocery workers working for grocery stores are essential
9  workers who perform services that are fundamental to the economy and health of the
10 community during the COVID-19 crisis. They work in high risk conditions with inconsistent
11 access to protective equipment and other safety measures; work in public situations with
12 limited ability to engage in physical distancing; and continually expose themselves and
13 the public to the spread of disease; and

14 WHEREAS, premium pay, paid in addition to regular wages, is an
15 established type of compensation for employees performing hazardous duty or work
16 involving physical hardship that can cause extreme physical discomfort and distress; and

17 WHEREAS, grocery workers working during the COVID-19 emergency
18 merit additional compensation because they are performing hazardous duty due to the
19 significant risk of exposure to the COVID-19 virus.  Grocery workers have been working
20 under these hazardous conditions for months.  They are working in these hazardous
21 conditions now and will continue to face safety risks as the virus presents an ongoing
22 threat for an uncertain period, potentially resulting in subsequent waves of infection; and

23 WHEREAS, the availability of grocery stores is fundamental to the health of
24 the community and is made possible during the COVID-19 emergency because grocery
25 workers are on the frontlines of this devastating pandemic supporting public health,
26 safety, and welfare by working in hazardous situations; and

27 WHEREAS, establishing an immediate requirement for grocery stores to
28 provide premium pay to grocery workers protects public health, supports stable incomes,

and promotes job retention by ensuring that grocery workers are compensated for the substantial risks, efforts, and expenses they are undertaking to provide essential services in a safe and reliable manner during the COVID-19 emergency.

NOW, THEREFORE, the City Council of the City of Long Beach ordains as follows:

Section 1.     The Long Beach Municipal Code is amended by adding Chapter 5.91 to read as follows:

CHAPTER 5.91

PREMIUM PAY FOR GROCERY WORKERS

5.91.005     Purpose.

As a result of the COVID-19 pandemic and the "Stay at Home" order issued by California Governor Gavin Newsom and the "Safer at Home" order issued by the City of Long Beach, this Ordinance aims to protect and promote the public health, safety, and welfare during the new coronavirus 19 (COVID-19) emergency by requiring grocery stores to provide premium pay for grocery workers performing work in Long Beach.  Requiring grocery stores to provide premium pay to grocery workers compensates grocery workers for the risks of working during a pandemic.  Grocery workers face magnified risks of catching or spreading the COVID-19 disease because the nature of their work involves close contact with the public, including members of the public who are not showing symptoms of COVID-19 but who can spread the disease.  The provision of premium pay better ensures the retention of these essential workers who are on the frontlines of this pandemic providing essential services and who are needed throughout the duration of the COVID-19 emergency. As such, they are deserving of fair and equitable compensation for their work.

//

OFFICE OF THE CITY ATTORNEY
CHARLES PARKIN, City Attorney
411 W. Ocean Boulevard, 9th Floor
Long Beach, CA 90802

4

OFFICE OF THE CITY ATTORNEY
CHARLES PARKIN, City Attorney
411 W. Ocean Boulevard, 9th Floor
Long Beach, CA 90802

5.91.010     Short title.

This ordinance shall constitute the "Premium Pay for Grocery Workers Ordinance" and may be cited as such.

5.91.020     Definitions.

For purposes of this Ordinance:

"Adverse action" means reducing the compensation to a grocery worker, garnishing gratuities, temporarily or permanently denying or limiting access to work, incentives, or bonuses, offering less desirable work, demoting, terminating, deactivating, putting a grocery worker on hold status, failing to rehire after a seasonal interruption of work, threatening, penalizing, retaliating, or otherwise discriminating against a covered grocery worker for any reason prohibited by Section 5.91.090.

"Adverse action" also encompasses any action by the hiring entity or a person acting on the hiring entity's behalf that would dissuade a grocery worker from exercising any right afforded by this ordinance.

"Aggrieved party" means a grocery worker or other person who suffers tangible or intangible harm due to a hiring entity or other person's violation of this ordinance.

"City" means the City of Long Beach.

"Covered grocery worker" means a grocery worker employed directly by a hiring entity who is entitled to premium pay pursuant to this Ordinance.

"Grocery worker" means a worker employed directly by a hiring entity at a grocery store.  Grocery worker does not include managers, supervisors or confidential employees.

"Grocery store" means a store that devotes seventy percent (70%) or more of its business to retailing a general range of food products, which may be fresh or packaged.  There is a rebuttable presumption that if a store

receives seventy percent (70%) or more revenue from retailing a general range of food products, then it qualifies as a grocery store.

"Hiring entity" means a grocery store that employs over three hundred (300) grocery workers nationally and employs more than fifteen (15) employees per grocery store in the City of Long Beach.

"Premium pay" means additional compensation owed to a grocery worker that is separate from hiring entity payments for providing services, bonuses, and commissions, as well as tips earned from customers.

"Respondent" means a grocery store, parent company or any person who is alleged or found to have committed a violation of this Ordinance.

5.91.030     Grocery worker coverage.

For the purposes of this Ordinance, covered grocery workers are limited to those who perform work for a hiring entity where the work is performed in the City of Long Beach.

5.91.040     Hiring entity coverage.

A.     For purposes of this Ordinance, hiring entities are limited to those who employ three hundred (300) or more grocery workers nationally and employ more than fifteen (15) employees per grocery store in the City of Long Beach.

B.     To determine the number of grocery workers employed for the current calendar year:

1.     The calculation is based upon the average number per calendar week of grocery workers who worked for compensation during the preceding calendar year for any and all weeks during which at least one (1) grocery worker worked for compensation.  For hiring entities that did not have any grocery workers during the preceding calendar year, the number of

OFFICE OF THE CITY ATTORNEY
CHARLES PARKIN, City Attorney
411 W. Ocean Boulevard, 9th Floor
Long Beach, CA 90802

6

grocery workers employed for the current calendar year is calculated based upon the average number per calendar week of grocery workers who worked for compensation during the first ninety (90) calendar days of the current year in which the hiring entity engaged in business.

      2.    All grocery workers who worked for compensation shall be counted, including but not limited to:

      a.  Grocery workers who are not covered by this Ordinance; and

      b.  Grocery workers who worked in Long Beach.

5.91.050      Premium pay requirement.

      A.    Hiring entities shall provide each grocery worker with premium pay consisting of an additional Four Dollars ($4.00) per hour for each hour worked.

      B.    Hiring entities shall provide the pay required by Subsection 5.91.050 (A) for a minimum of one hundred twenty (120) days from the effective date of this Ordinance.

      C.    Unless extended by City Council, this ordinance shall expire in one hundred twenty (120) days.

5.91.060      Grocery worker and consumer protections.

      A.    No hiring entity shall, as a result of this Ordinance going into effect, take any of the following actions:

      1.    Reduce a grocery worker's compensation;

      2.    Limit a grocery worker's earning capacity.

      B.    It shall be a violation if this Ordinance is a motivating factor in a hiring entity's decision to take any of the actions in Subsection 5.91.060 (A) unless the hiring entity can prove that its decision to take the action(s)

OFFICE OF THE CITY ATTORNEY
CHARLES PARKIN, City Attorney
411 W. Ocean Boulevard, 9th Floor
Long Beach, CA 90802

7

would have happened in the absence of this Ordinance going into effect.

5.91.070     Notice of rights.

A.      Hiring entities shall provide covered grocery workers with a written notice of rights established by this ordinance.  The notice of rights shall be in a form and manner sufficient to inform grocery workers of their rights under this ordinance.  The notice of rights shall provide information on:

1.      The right to premium pay guaranteed by this Ordinance;

2.      The right to be protected from retaliation for exercising in good faith the rights protected by this ordinance; and

3.      The right to bring a civil action for a violation of the requirements of this Ordinance, including a hiring entity's denial of premium pay as required by this Ordinance and a hiring entity or other person's retaliation against a covered grocery worker or other person for asserting the right to premium pay or otherwise engaging in an activity protected by this ordinance.

B.      Hiring entities shall provide the notice of rights required  by posting a written notice of rights in a location of the grocery store utilized by employees for breaks, and in an electronic format that is readily accessible to the grocery workers.  The notice of rights shall be made available to the grocery workers via smartphone application or an online web portal, in English and any language that the hiring entity knows or has reason to know is the primary language of the grocery worker(s).

5.91.080     Hiring entity records.

A.      Hiring entities shall retain records that document compliance with this Ordinance for covered grocery workers.

B.      Hiring entities shall retain the records required by Subsection

OFFICE OF THE CITY ATTORNEY
CHARLES PARKIN, City Attorney
411 W. Ocean Boulevard, 9th Floor
Long Beach, CA 90802

8

5.91.080 (A) for a period of two (2) years.

        C.     If a hiring entity fails to retain adequate records required under Subsection 5.91.080 (A), there shall be a presumption, rebuttable by clear and convincing evidence, that the hiring entity violated this Ordinance for each covered grocery worker for whom records were not retained.

5.91.090      Retaliation prohibited.

        No hiring entity employing a grocery worker shall discharge, reduce in compensation, or otherwise discriminate against any grocery worker for opposing any practice proscribed by this Ordinance, for participating in proceedings related to this Ordinance, for seeking to exercise their rights under this Ordinance by any lawful means, or for otherwise asserting rights under this Ordinance.

5.91.100      Violation.

        The failure of any respondent to comply with any requirement imposed on the respondent under this Ordinance is a violation.

5.91.110      Remedies.

        A.     The payment of unpaid compensation, liquidated damages, civil penalties, penalties payable to aggrieved parties, fines, and interest provided under this Ordinance is cumulative and is not intended to be exclusive of any other available remedies, penalties, fines, and procedures.

        B.     A respondent found to be in violation of this Ordinance for retaliation under Section 5.91.090 shall be subject to any appropriate relief at law or equity including, but not limited to reinstatement of the aggrieved party, front pay in lieu of reinstatement with full payment of unpaid compensation plus interest in favor of the aggrieved party under the terms of

OFFICE OF THE CITY ATTORNEY
CHARLES PARKIN, City Attorney
411 W. Ocean Boulevard, 9th Floor
Long Beach, CA 90802

9

this Ordinance, and liquidated damages in an additional amount of up to twice the unpaid compensation.

5.91.120    Private right of action.

A.    Any covered grocery worker that suffers financial injury as a result of a violation of this Ordinance, or is the subject of prohibited retaliation under Section 5.91.090, may bring a civil action in a court of competent jurisdiction against the hiring entity or other person violating this Ordinance and, upon prevailing, may be awarded reasonable attorney fees and costs and such legal or equitable relief as may be appropriate to remedy the violation including, without limitation: the payment of any unpaid compensation plus interest due to the person and liquidated damages in an additional amount of up to twice the unpaid compensation; and a reasonable penalty payable to any aggrieved party if the aggrieved party was subject to prohibited retaliation.

5.91.130    Encouragement of more generous policies.

A.    Nothing in this Ordinance shall be construed to discourage or prohibit a hiring entity from the adoption or retention of premium pay policies more generous than the one required herein.

B.    Nothing in this Ordinance shall be construed as diminishing the obligation of a hiring entity to comply with any contract or other agreement providing more generous protections to a grocery worker than required by this Ordinance.

5.91.140    Other legal requirements.

This Ordinance provides minimum requirements for premium pay while working for a hiring entity during the COVID-19 emergency and shall

10

OFFICE OF THE CITY ATTORNEY
CHARLES PARKIN, City Attorney
411 W. Ocean Boulevard, 9th Floor
Long Beach, CA 90802

OFFICE OF THE CITY ATTORNEY
CHARLES PARKIN, City Attorney
411 W. Ocean Boulevard, 9th Floor
Long Beach, CA 90802

not be construed to preempt, limit, or otherwise affect the applicability of any other law, regulation, requirement, policy, or standard that provides for higher premium pay, or that extends other protections to grocery workers; and nothing in this Ordinance shall be interpreted or applied so as to create any power or duty in conflict with federal or state law.  Nothing in this Section shall be construed as restricting a grocery worker's right to pursue any other remedies at law or equity for violation of their rights.

5.91.150    Severability.

The provisions of this Ordinance are declared to be separate and severable. If any clause, sentence, paragraph, subdivision, section, subsection, or portion of this ordinance, or the application thereof to any hiring entity, grocery worker, person, or circumstance, is held to be invalid, it shall not affect the validity of the remainder of this Ordinance, or the validity of its application to other persons or circumstances.

Section 2.     Declaration of Urgency.  This Ordinance is urgently required to provide economic relief to grocery workers in light of the COVID-19 pandemic and related state and local "Safer at Home" health orders limiting business operations. For these reasons, the establishment of labor standard requirements for premium pay for grocery workers working in Long Beach is immediately necessary.

Section 3.     This Ordinance is an emergency Ordinance duly adopted by the City Council by a vote of five (5) of its members and shall take effect immediately. The City Clerk shall certify to a separate roll call and vote on the question of the emergency of this Ordinance and to its passage by the vote of five (5) members of the City Council of the City of Long Beach, and cause the same to be posted in three (3) conspicuous places in the City of Long Beach, and it shall thereupon take effect and shall

11

be operative immediately.

Section 4.     This Ordinance shall also be adopted by the City Council as a regular ordinance, to the end that in the event of any defect or invalidity in connection with the adoption of this Ordinance as an emergency Ordinance, the same shall, nevertheless, be and become effective on the thirty-first (31st) day after it is approved by the Mayor.  The City Clerk shall certify to the passage of this Ordinance by the City Council of the City of Long Beach and shall cause the same to be posted in three (3) conspicuous places in the City of Long Beach.

I hereby certify that on a separate roll call and vote which was taken by the City Council of the City of Long Beach upon the question of emergency of this Ordinance at its meeting of _____, 20___, the Ordinance was declared to be an emergency by the following vote:

Ayes:          Councilmembers:     _____

_____

_____

Noes:          Councilmembers:     _____

_____

Absent:        Councilmembers:     _____

_____

Recusal(s)     Councilmembers:     _____

_____

I further certify that thereafter, at the same meeting, upon a roll call and vote on the adoption of the Ordinance, it was adopted by the City Council of the City of Long Beach by the following vote:

//

OFFICE OF THE CITY ATTORNEY
CHARLES PARKIN, City Attorney
411 W. Ocean Boulevard, 9th Floor
Long Beach, CA 90802

12

GJA:kjm A20-06935  1/15//21  v4.2  01229222.docx

Ayes:        Councilmembers: _____

_____

_____

Noes:        Councilmembers: _____

Absent:        Councilmembers: _____

_____

Recusal(s)        Councilmembers: _____

_____

I further certify that the foregoing Ordinance was thereafter adopted on final reading by the City Council of the City of Long Beach at its meeting of _____, 20___, by the following vote:

Ayes:        Councilmembers: _____

_____

_____

Noes:        Councilmembers: _____

Absent:        Councilmembers: _____

_____

Recusal(s)        Councilmembers: _____

_____

_____
City Clerk

Approved: _____        _____
(Date)                                    Mayor

OFFICE OF THE CITY ATTORNEY
CHARLES PARKIN, City Attorney
411 W. Ocean Boulevard, 9th Floor
Long Beach, CA 90802

13