WILLIAM F. TARANTINO (CA SBN 215343)
WTarantino@mofo.com
KWAN PARK (SBN 306719)
BPark@mofo.com
ROBERT SANDOVAL (SBN 311032)
RSandoval@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

TRITIA M. MURATA (CA SBN 234344)
TMurata@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, California 90017-3543
Telephone: 213.892.5200
Facsimile: 213.892.5454

Attorneys for Plaintiff
CALIFORNIA GROCERS ASSOCIATION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA GROCERS ASSOCIATION, a California non-profit organization,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF LONG BEACH, a charter municipality,<br><br>Defendant. | Case No. 2:21-CV-00524-ODW (ASx)<br><br>**FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiff California Grocers Association ("Plaintiff" or "CGA") brings this amended complaint against Defendant City of Long Beach ("Defendant" or "City") and alleges as follows in this Complaint for declaratory and injunctive relief:

1

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
sf-4409829

# INTRODUCTION

1. At the onset of the COVID-19 pandemic, the State of California and various counties, cities, and other regulatory bodies throughout the state issued a series of emergency orders and regulations in an effort to stem the spread of the virus and protect the public health and welfare. These early efforts—aimed at balancing the public's basic economic and social needs with a desire to minimize COVID morbidity and mortality—came at a steep price, especially for essential businesses, and the millions of employees and members of the public who rely on them.

2. California grocers have stayed open to serve their communities since day one. They understand that defeating this pandemic requires extraordinary measures and have eagerly committed themselves to the task. Since March of 2020, California grocers of all sizes have established rigorous and science-driven safety measures, often at great expense, to adapt to this new environment and ensure that they operate in a safe and hygienic manner in order to help slow the spread of the virus, and protect their workers and the public.

3. Grocers have implemented comprehensive safety measures for customers and employees and compensated frontline grocery employees for their extra efforts in a difficult environment. Grocers have provided "appreciation pay," "hero bonuses," and "thank you pay" to reward their associates. Additionally, in terms of employee support, grocers have offered COVID-19 testing to employees and provided emergency leave and paid time off to those affected by the virus or experiencing symptoms.

4. For worker safety, grocers have provided supplies to employees including face masks and protective gear in addition to encouraging employees to stay home if feeling ill and implementing paid leave policies. Plexiglas shields, physical distancing measures, and contactless payment and delivery services have been implemented to protect employees. Some of California's largest grocers such

1  as Kroger and Albertsons joined the United Food and Commercial Workers
2  International union just last year to urge federal and state governments to designate
3  grocery store employees as emergency first responders.

4     5.    Yet on January 19, 2021, the City passed the "Premium Pay for
5  Grocery Workers Ordinance" ("Ordinance") which requires employers to pay a $4
6  per hour premium on whatever the employees existing wage is at the time of
7  enactment, regardless of any existing bonus, incentive, or hero pay program that the
8  employer may have in place.

9     6.    The Ordinance unreasonably singles out specific employee classes
10 in specific grocers, while ignoring employers or essential frontline workers outside
11 the grocery industry.  Plaintiff seeks a declaration that the law is invalid and
12 unconstitutional as applied to CGA's Members, and an injunction halting any
13 action to enforce the Ordinance as to CGA's Members on the grounds that it (1) is
14 preempted by federal law regulating collective bargaining and unfair labor
15 practices; (2) violates the equal protection and contracts clauses of the U.S. and
16 California constitutions.

**JURISDICTION AND VENUE**

18    7.    This Court has jurisdiction over the subject matter of this suit
19 pursuant to 28 U.S.C. §1331, as the Plaintiffs' claims arise under federal laws;
20 namely, the National Labor Relations Act, 29 U.S.C. §141 *et seq.*; Article VI of the
21 U.S. Constitution which designates the Constitution and Laws of the United States
22 as the supreme law of the land; and the equal protection clause and contracts clause
23 of the U.S. Constitution.

24    8.    This Court has supplemental jurisdiction over this subject matter
25 pursuant to 28 U.S.C. §1367(a), as the Plaintiffs' claims arising under the
26 California Constitution are so closely related to the federal question claims that they
27 form part of the same case or controversy under Article III of the U.S. Constitution.
28    9.    Venue is proper in this Court pursuant to 28 U.S.C. §1391(b), as

this Court is sited in the federal judicial district where the events giving rise to the CGA's claims have occurred, are now occurring, and will occur in the future if not prevented through actions of this Court. CGA's members are situated in this district and are and will continue to be adversely affected by the irreparable harms sought to be remedied and prevented by this Court's action upon this Complaint.

## PARTIES

10. Plaintiff California Grocers Association has served as the voice of the state's grocery community for over 120 years. As a nonprofit, statewide trade association, CGA's membership is comprised of over 300 retailers and approximately 150 grocery supply companies. As part of its mission, CGA has advocated on behalf of its member retailers on important policy issues. Headquartered in Sacramento, California, CGA brings this action on behalf of its members operating stores in the City of Long Beach.

11. Defendant, City of Long Beach, is and at all relevant times has been a public entity duly organized and existing under and by virtue of the laws of the State of California as a charter municipality.

## FACTUAL BACKGROUND

12. California Grocers Association pursues this action on behalf of its members who are grocery store employers ("Members") because the employers who operate grocery stores in Long Beach will suffer a direct and adverse impact from the application of the Ordinance, and thus would have standing to pursue these claims in their own right. The policy and legal interest CGA seeks to protect is at the core of Plaintiff's mission, and the injunctive and declaratory relief sought does not require the participation of individual members.

13. Several Members operate grocery stores in the City that employ members of a specific labor union, United Food and Commercial Workers International, Local 324 ("UFCW 324"), and those employees are parties to collective bargaining agreements that govern the terms of their employment,

including wage scales. Other Members operate grocery stores that do not employ unionized workers, but those employees are free to organize and select a collective bargaining unit, should they choose to do so.

14. Members have suffered or will continue to suffer economic and non-economic harm as a result of the enactment of the Ordinance, and its foreseeable consequences on union organizing, ongoing collective bargaining, and labor relations for both unionized and non-union grocery stores in the City of Long Beach. Members are required to alter the wage scales and other terms of their existing collective bargaining agreements, regardless of any additional hero pay, bonuses, or other non-monetary compensation provided to their employees to ease the burden of the COVID-19 pandemic.

15. The Ordinance also prohibits an employer from taking any action related to the Ordinance that could impact any employee's "earning capacity," effectively preventing the employer from taking any action to control labor costs, despite the government-mandated wage increases. Failure to immediately comply with the Ordinance will expose the Members to civil sanctions, loss of goodwill, and other irreparable harm.

16. UFCW 324 sponsored this Ordinance. Both UFCW 324 and the national UFCW organization have been active in promoting and negotiating with employers for hero pay. Over the last two months, the national UFCW has made numerous statements in the press that hazard pay bonuses and other compensation are appropriate topics for bargaining, even announcing recent "victories" in negotiations with other grocery retailers in California, New Jersey, New York, and around the country where employers have agreed to pay supplemental hazard pay premiums, some of which are being paid currently. For example, CGA Member Stater Brothers has one location in Long Beach, and agreed in December to pay $2/hour as a hazard pay premium to certain employees.

17. By design, the Ordinance picks winners and losers. It singles out

large grocery companies with unionized workforces (i.e., UFCW 324's members) without providing any reasonable justification for the exclusion of other employers or frontline retail workers. The Ordinance arbitrarily and improperly targets certain grocery store businesses in Long Beach for disparate treatment while not requiring the same commitments from similarly situated businesses, or conferring *any* benefits on similarly situated employees. There is no support for any of the City's statements that the Premium Pay will protect public health, address economic insecurity, and promote job retention.

## THE ORDINANCE

18. The Premium Pay for Grocery Workers Ordinance codified in Chapter 5.91 in the Long Beach Municipal Code is attached hereto as **Exhibit A**. It applies to "grocery stores" which is defined as a store that devotes seventy percent (70%) or more of its business to retailing a general range of food products, which may be fresh or packaged. Section 5.91.020. Specifically, the ordinance applies to those grocery store "hiring entit[ies]" that employ three hundred (300) or more grocery workers nationally and employ more than fifteen (15) employees per grocery store in the City of Long Beach. Section 5.91.040.

19. Grocery stores meeting this minimum threshold of employees are required to provide each employee with premium pay consisting of an additional four dollars ($4.00) per hour for each hour worked. Section 5.91.050. The Ordinance is set to expire in 120 days. *Id.*

20. The Ordinance prohibits reducing a grocery employee's compensation or limiting a grocery employee's earning capacity unless the employer can prove the decision would have happened in absence of the Ordinance. Section 5.91.060. Compensation, as used in the Ordinance includes wages, combines with benefits and any other compensation (i.e. paid leave) and that any reduction of worker wages, hours, or benefits could be considered a limitation on an employee's "earning capacity."

21. Grocery stores are required to provide a notice of rights established by the Ordinance. Section 5.91.070.

# FIRST CAUSE OF ACTION

## Declaratory and Injunctive Relief

## (NLRA Preemption)

22. CGA incorporates herein by this reference the allegations contained in Paragraphs 1 through 21, inclusive.

23. Enacted in 1935, the National Labor Relations Act ("NLRA"), as amended, 29 U.S.C. § 151, *et seq.*, creates a uniform federal body of law governing union organizing, collective bargaining, and labor-management relations applicable to employers engaged in interstate commerce. It established various rules concerning collective bargaining and defined a series of banned unfair labor practices, including bans on interference with the formation or organization of labor unions by employers. The NLRA does not apply to certain workers, including supervisors, managerial employees and confidential employees – all categories specifically excluded from the Ordinance.

24. The NLRA prohibits state and local regulation of conduct that Congress intended to be left to be controlled by the free-play of economic forces. Legislation that interferes with the "balanced state of collective bargaining" is preempted by the NLRA. *See Machinists v. Wisconsin Employment Relations Comm'n*, 427 U.S. 132 (1976).

25. In particular, the NLRA preempts any and all state and local enactments that, by design or consequence, regulate or interfere with the then-existing balance of economic power between labor and management with respect to zones of activity that, under federal labor law, are intended to be left to the free play of economic forces. Laws subject to NLRA preemption include laws that interfere with or attempt to regulate the economic tools available to labor or management during the course of collective bargaining or that otherwise interfere with the

collective bargaining process, such as those that alter the parties' rights and economic alternatives during collective bargaining, or the processes and procedures utilized for union organizing.

26.   Application of the Ordinance to the activities of the Long Beach Members unequivocally intrudes upon zones of activity in the areas of labor relations, union organizing, and collective bargaining that is reserved under federal labor law and policy to the free play of economic forces.  The Ordinance establishes premium pay standards that, by design or consequence, empower the UFCW or other collective bargaining units to secure a wage rate they could not otherwise have obtained from the employer at a unionized or non-union grocery store. This undermines the collective bargaining process and disrupts the process of union organizing.  In fact, the National Labor Relations Board recently issued an Advice Memorandum confirming that employers generally have no obligation to engage in collective bargaining regarding hazard pay in the absence of specific reopener provisions in a collective bargaining agreement.[1]

27.   While the City has the ability to enact ordinances to further the health and safety of its citizens, the Ordinance here bears no relation to those goals. Local minimum wage laws, for example, seek to lessen the burden on public welfare services and alleviate poverty. This ordinance is not a minimum wage or labor standard.  It is a mandatory hourly bonus for a specific group of workers, regardless of the wage negotiated in the current collective bargaining agreements or other employment agreements.

28.   The Ordinance is preempted by the NLRA as it regulates zones of activity that Congress intentionally left to be controlled by the free play of

---

[1] National Labor Relations Board, Advice Memorandum re: Forterra Pipe & Precase, LLC, Case No. 15-CA-260140 (issued November 13, 2020, released December 14, 2020) available at https://www.nlrb.gov/guidance/memos-research/advice-memos/advice-memoranda-dealing-covid-19  (last visited March 10, 2021).

economic forces.

29. The City's application and enforcement of the Ordinance will cause CGA's Members to suffer irreparable harm for which they have no adequate remedy at law, even if the Ordinance is later declared by this Court to be void and unenforceable. This claim is also brought pursuant to 42 U.S.C. §1983 and §1988(b).

30. CGA is entitled to judgment declaring the Ordinance to be void and unenforceable under the Supremacy Clause of the U.S. Constitution and equitable and injunctive relief to prevent the City of Long Beach or any other private enforcer from attempting to enforce or give effect to the Ordinance as it relates to CGA's Members.

## SECOND CAUSE OF ACTION

### Declaratory and Injunctive Relief

### (Equal Protection Clause of the United States Constitution)

31. CGA incorporates herein by this reference the allegations contained in Paragraphs 1 through 30, inclusive.

32. CGA hereby seeks declaratory, equitable and injunctive relief to prevent the City from depriving Plaintiff's members of the protections afforded to them under the Equal Protection Clause of the U.S. Constitution, which guarantee each and all of them equal protection of the laws. (U.S. Const., Amend. XIV, § 1). This claim is also brought pursuant to 42 U.S.C. §1983 and §1988(b).

33. The Equal Protection Clause requires that persons who are similarly situated receive like treatment under the law, and that statutes may single out a class for distinction only if that classification bears a rational relationship to the purpose of the statute. As such, the City may not irrationally single out one class of individuals for discriminatory treatment.

34. The Ordinance improperly singles out certain grocery store businesses in Long Beach for disparate treatment while not requiring the same

treatment of similarly situated businesses. More importantly, the ordinance implicates the Members' fundamental right to be free from unreasonable governmental interference with their contracts, specifically their collective bargaining agreements and other employment agreements.

35. Each of the Members that have agreements with UFCW 324 have entered into specific and binding collective bargaining agreements to pay wages that exceed the applicable statutory minimum wages and require the employers to provide for additional health, welfare and paid leave benefits. None of the provisions governing wages or other compensation in those agreements may be unilaterally reduced by the Employer. In fact, reduction of wages or other compensation is prohibited. All of the Agreements between UFCW 324 and the Members, including Albertsons/Vons (and Pharmacy), Ralph's (and Pharmacy), Food4Less, Gelson's, Stater Bros., Super A, and El Super, are substantially similar in form and are available to the public at UFCW's website ([www.ufcw324.org/member](www.ufcw324.org/member)). Each of those Agreements have terms that extend beyond the 120 days impacted by this Ordinance, and all but one expire in March 2022. The Agreements are incorporated herein by reference.

36. The stated purpose of the Ordinance, namely, to protect public health, address economic insecurity, and promote job retention during the COVID-19 emergency by requiring grocery stores to provide premium pay is not rationally related to the discriminatory treatment of CGA's Members. No significant and legitimate public purpose exists for the Ordinance. The City's stated objectives are merely an attempt to impose a public policy rationale on interest-group driven legislation for labor unions and, in particular, for UFCW 324.

37. By virtue of the foregoing, application of the Ordinance to the CGA's Members within the City violates the equal protection guarantees of the U.S. Constitution.

38. The City's application and enforcement of the Ordinance will cause

Plaintiff's members to suffer irreparable harm for which they have no adequate remedy at law, even if the Ordinance is later declared by this Court to be void and unenforceable as it relates to CGA's Members.

## THIRD CAUSE OF ACTION

### Declaratory and Injunctive Relief

### (Equal Protection Clause of the California Constitution)

39. CGA incorporates herein by this reference the allegations contained in Paragraphs 1 through 37, inclusive.

40. CGA hereby seeks declaratory, equitable and injunctive relief to prevent the City from depriving CGA's members of the protections afforded to them under the Equal Protection Clause of the California Constitution, which like the U.S. Constitution, guarantees each and all of them equal protection of the laws. (Cal. Const., Art. I § 7.)

41. For the same reasons set forth in Paragraphs 31 through 37 above, the Ordinance violates the Equal Protection Clause of the California. Such application will cause CGA's Members to suffer irreparable harm for which they have no adequate remedy at law.

## FOURTH CAUSE OF ACTION

### For Declaratory and Injunctive Relief

### (Contracts Clause of the U.S. Constitution)

42. CGA incorporates herein by this reference the allegations contained in Paragraphs 1 through 40, inclusive.

43. CGA hereby seeks declaratory, equitable and injunctive relief to prevent the City from depriving CGA's Members of the protections afforded to them under the Contracts Clause of the U.S. Constitution, which provides in pertinent part that: "No State shall . . . pass any . . . Law impairing the Obligation of Contracts . . . ." (U.S. Const., Art. I, § 10, cl. 1). The Contract Clause imposes limits upon the power of a State, and Municipalities operating under the color of

State law, to abridge existing contractual relationships, even in the exercise of its otherwise legitimate police power.

44. The Ordinance substantially impairs and interferes with Members' contracts, specifically their employment agreements or collective bargaining agreements with their employees, which have specific, inflexible terms governing employee wages and compensation. For many employees, the $4 per hour supplement is nearly 30% of their existing hourly wage, leading to a massive increase in labor costs for CGA's members.

45. The Ordinance impairment of Members' contracts is not tied to a reasonable public purpose. The City's stated objectives are to protect public health, address economic insecurity, and promote job retention. None of these justifications support this measure. The Ordinance will not improve public health or reduce the spread of COVID-19. The City's stated objectives are an attempt to impose a public policy rationale on interest-group driven legislation for labor unions and, in particular, for UFCW.

46. Even if the City could show a significant and legitimate public purpose behind the regulation, the substantial impairment to the Members' contractual rights and obligations (i.e., the terms of the Members' existing collective bargaining agreements) are neither reasonable nor necessary to fulfill any such public purpose. Moreover, the Ordinance is an unprecedented form of wage regulation that the Members could not reasonably anticipate.

47. By virtue of the foregoing, application of the Ordinance to CGA's members constitutes a substantial and unconstitutional impairment of those members existing contractual relationships that will cause them to suffer irreparable harm for which they have no adequate remedy at law.

## FIFTH CAUSE OF ACTION
### Declaratory and Injunctive Relief
### (Contracts Clause of the California Constitution)

48. CGA incorporate herein by this reference the allegations contained in Paragraphs 1 through 45, inclusive. Plaintiffs hereby seek declaratory and injunctive relief to prevent the City from violating, and continuing to violate, the Contract Clause of the California Constitution, which provides in pertinent part that: "A ... law impairing the obligation of contracts may not be passed." (Cal. Const., Art. I, § 9.)

49. Like the Federal Contracts Clause, the California Contracts Clause also imposes limits upon the State of California, and its municipalities, to abridge existing contractual relationships, even in the exercise of its otherwise legitimate police power. For the same reasons set forth in Paragraphs 41 through 45 above, application of the Ordinance to CGA's members within the City constitutes a substantial and unconstitutional impairment of those members existing contractual relationship in violation of the California Contract Clause. Such application will cause those members to suffer irreparable harm for which they have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

1. On the first cause of action, a judgment declaring that the Ordinance, as well as any act taken in furtherance of the Ordinance by any person, is preempted by the National Labor Relations Act, and its implementing regulations and guidance, and are therefore void and unenforceable against any member of the California Grocers Association, and entering a permanent injunction enjoining the City from enforcing or taking any action under the Ordinance to enforce it against any member of the California Grocers' Association;

2. On the second and third causes of action, enter a judgment declaring that the Ordinance, as well as any act taken in furtherance of the Ordinance by any person, violate state and federal equal protection guarantees, and are therefore void and invalid, and entering a preliminary and permanent injunction enjoining the City

from enforcing or taking any action under the Ordinance with respect to the members of the California Grocers' Association;

3. On the fourth and fifth causes of action, enter a judgment declaring that the Ordinance, as well as any act taken in furtherance of the Ordinance by any person, violate the contracts clauses of the state and federal constitution, and are therefore void and invalid, and entering a preliminary and permanent injunction enjoining the City from enforcing or taking any action under the Ordinance with respect to the members of the California Grocers' Association;

4. For an award of attorneys' fees and costs of suit herein pursuant to California Code of Civil Procedure § 1021.5, 42 U.S.C. §1988, or any other applicable law; and

5. For such other and further relief as the Court may deem just and proper.

Dated: March 10, 2021                    MORRISON & FOERSTER LLP

By:  */s/ William F. Tarantino*
William F. Tarantino

Attorneys for Plaintiff
CALIFORNIA GROCERS ASSOCIATION