O

# United States District Court
# Central District of California

| | |
|---|---|
| CALIFORNIA GROCERS ASSOCIATION,<br><br>           Plaintiff,<br><br>    v.<br><br>CITY OF LONG BEACH,<br><br>           Defendant.<br><br>UNITED FOOD & COMMERCIAL WORKERS LOCAL 324,<br><br>           Intervenor. | Case № 2:21-cv-00524-ODW (ASx)<br><br>**ORDER GRANTING MOTIONS TO DISMISS [51] [52]** |

## I. INTRODUCTION

On January 20, 2021, Plaintiff California Grocers Association ("CGA") initiated this action against Defendant City of Long Beach ("City") arguing the Premium Pay for Grocery Workers Ordinance ("Ordinance") is invalid under federal and state constitutional law. (Compl., ECF No. 2.) The parties stipulated for United Food & Commercial Workers Local 324 ("UFCW324") to intervene as a Defendant, as it sponsored the Ordinance's passing. (Order Granting Mot. Intervene, ECF No. 36.) On February 25, 2021, the Court denied CGA's request for a preliminary

injunction. (Order Den. Prelim. Inj., ECF No. 41.) On March 10, 2021, CGA amended its complaint and the City and UFCW324 each move to dismiss. (*See* First Am. Compl. ("FAC"), ECF No. 47; UFCW324 Mot. Dismiss ("UFCW324 Mot."), ECF No. 51; City Mot. Dismiss ("City Mot."), ECF No. 52.) The matter is fully briefed. (*See* Opp'n, ECF No. 53; UFCW324 Reply, ECF No. 54; City Reply, ECF No. 55.) For the reasons discussed below, the Court **GRANTS** the Motions.[1]

## II. BACKGROUND

On January 19, 2021, the City enacted the Ordinance mandating that all grocery workers in the area must be paid four dollars ($4.00) more than their hourly wage for a period of at least 120 days. (FAC ¶¶ 18–19.) To combat the effects of the global COVID-19 pandemic, the Ordinance "aims to protect and promote the public health, safety, and welfare . . . by requiring grocery stores to provide premium pay for grocery workers performing work in Long Beach." (Compl. Ex. A ("Ordinance") § 5.91.005, ECF No. 2.) The Ordinance also states that "premium pay better ensures the retention of these essential workers who are on the frontlines of this pandemic providing essential services" and "[a]s such, they are deserving of fair and equitable compensation for their work." (*Id.*)

In pertinent part, the Ordinance provides:
- "Hiring entities shall provide each grocery worker with premium pay consisting of an additional Four Dollars ($4.00) per hour for each hour worked." (*Id.* § 5.91.050(A).)
- "Hiring entities shall provide the [$4.00 premium pay] for a minimum of one hundred twenty (120) days from the effective date of th[e] Ordinance." (*Id.* § 5.91.050(B); *see also id.* § 5.91.050(C) ("Unless extended by City Council, this ordinance shall expire in one hundred twenty (120) days.").)

---

[1] Having carefully considered the papers filed in connection with the Motions, the Court deemed the matters appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

- "No hiring entity shall, as a result of this Ordinance going into effect . . . [1] Reduce a grocery worker's compensation; [or 2] Limit a grocery worker's earning capacity." (*Id.* § 5.91.060(A).)
- "'Grocery worker' means a worker employed directly by a hiring entity at a grocery store. Grocery worker does not include managers, supervisors[,] or confidential employees." (*Id.* § 5.91.020.)
- "'Grocery store' means a store that devotes seventy percent (70%) or more of its business to retailing a general range of food products, which may be fresh or packaged." (*Id.*)
- "'Hiring entity' means a grocery store that employs over three hundred (300) grocery workers nationally and employs more than fifteen (15) employees per grocery store in the City of Long Beach." (*Id.*)
- "The provisions of this Ordinance are declared to be separate and severable. If any clause, sentence, paragraph, subdivision, section, subsection, or portion . . . , or the application thereof . . . is held to be invalid, it shall not affect the validity of the remainder of this Ordinance, or the validity of its application to other persons or circumstances." (*Id.* § 5.91.150.)

CGA contends the Ordinance "picks winners and losers" because it targets only large grocery employers, without justifying the exclusion of other essential worker employers. (FAC ¶ 17.) On that basis, CGA asserts five causes of action, for (1) National Labor Relations Act ("NLRA") Preemption, (2) violation of the Equal Protection Clause of the United States Constitution and (3) California Constitution, and (4) violation of the Contracts Clause of the United States Constitution and (5) California Constitution. (FAC ¶¶ 22–49.) Defendants move to dismiss the FAC arguing that CGA fails to state a claim. (*See generally* City Mot.; UFCW324 Mot.)

### III. LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal

theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). "To survive a motion to dismiss . . . under Rule 12(b)(6), a complaint generally must satisfy only the minimal notice pleading requirements of Rule 8(a)(2)"—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (citing *Twombly*, 550 U.S. at 555).

Whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings, judicially noticeable facts, and documents incorporated by reference in the complaint; it must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679, 688 (9th Cir. 2001). However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

## IV. DISCUSSION

Defendants move to dismiss each of CGA's causes of action pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), on the basis that CGA fails to state a claim for NLRA preemption, violation of the Contract Clause of the California and United States Constitutions, and violation of the Equal Protection Clause of the California and United States Constitutions.[2]

---

[2] In discussing the Equal Protection and Contract Clauses, the Court focuses on the relevant federal standards, as analysis of the California and federal Constitutions on these points of law does not differ. *See Campanelli v. Allstate Life Ins. Co.*, 322 F.3d 1086, 1097 (9th Cir. 2003) (stating

### A. NLRA Preemption

CGA argues that the NLRA preempts the Ordinance, as the Ordinance's operation impermissibly nullifies collective bargaining mechanics and dictates any outcome. (Opp'n 6–13.) Defendants claim the Ordinance is merely a substantive labor standard that still allows for effective bargaining, so there is no preemption and CGA fails to state a claim. (City Mot. 5–15; UFCW 324 Mot. 5–16.)

"The NLRA—the federal architecture that governs relations between labor and management . . .—has no express preemption provision. Nonetheless, the Supreme Court has recognized two implicit preemption mandates: *Garmon* preemption and *Machinists* preemption." *Am. Hotel & Lodging Ass'n v. City of Los Angeles*, 834 F.3d 958, 963 (9th Cir. 2016) (citations omitted). In this case, CGA relies solely on a *Machinists* preemption theory, which "prohibits states from restricting a 'weapon of self-help,' such as a strike or lock-out." *Id.* (quoting *Int'l Ass'n of Machinists v. Wis. Emp. Rels. Comm'n*, 427 U.S. 132, 146 (1976)). *Machinists* preemption ensures that "these self-help tools [are] unregulated to allow tactical bargaining decisions 'to be controlled by the free play of economic forces.'" *Id.* (quoting *Machininsts*, 427 U.S. at 140).

The NLRA primarily protects the collective bargaining process, rather than dictates bargained-for substantive terms. *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 20 (1987). "[T]he mere fact that a state statute pertains to matters over which the parties are free to bargain cannot support a claim of pre-emption . . . ." *Id.* at 21. As such, there is a "general principle that governments can pass minimum labor standards pursuant to their police power without running afoul of federal labor law." *Am. Hotel & Lodging Ass'n v. City of Los Angeles*, 119 F. Supp. 3d 1177, 1187 (C.D. Cal. 2015), *aff'd*, 834 F.3d

---

California follows federal analysis for Contract Clause); *RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1154 (9th Cir. 2004) (stating California follows federal analysis for Equal Protection Clause).

958. "The question then becomes the extent of the substantive requirements that a state may impose on the bargaining process." *Chamber of Com. v. Bragdon*, 64 F.3d 497, 501–02 (9th Cir. 1995). As such, "a minimum labor standard that simply 'alters the playing field' does not compel preemption; but when a minimum labor standard not only 'alters the playing field' but also 'forces the hand' of one or both parties, then *Machinists* preemption applies." *Am. Hotel*, 119 F. Supp. 3d at 1187. Further, "pre-emption should not be lightly inferred in this area, since the establishment of labor standards falls within the traditional police power of the State."[3] *Fort Halifax*, 482 U.S. at 21.

The Ordinance at issue here is a minimum labor standard, not normally subject to preemption. The Ordinance sets a minimum for "premium pay," requires its payment for 120 days, encourages more generous policies, and provides certain protections to ensure that employees receive the minimum benefit and employers do not implement an offset. (*See* Ordinance §§ 5.91.050, .060, .130.) The Ordinance "affect[s] union and nonunion employees equally, and neither encourage[s] nor discourage[s] the collective-bargaining processes." *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 755 (1985). The Ordinance does "technically interfere with labor-management relations" but it does "not 'regulate the mechanics of labor dispute resolution.'" *Am. Hotel*, 834 F.3d at 963 (quoting *Concerned Home Care Providers, Inc. v. Cuomo*, 783 F.3d 77, 86 (2d Cir. 2015)). As such, the Ordinance is a clear example of a minimum labor standard not subject to *Machinists* preemption, because it does not impinge collective bargaining mechanisms. Despite this, CGA contends that the

---

[3] CGA disputes the existence of any presumption against pre-emption for labor standards. (Opp'n 4–6.) However, such a presumption in the context of the NLRA is well-established. *See Bldg. & Constr. Trades Council of Metro. Dist. v. Associated Builders & Contractors of Mass./R.I., Inc.*, 507 U.S. 218, 224 (1993) ("We are reluctant to infer pre-emption."); *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 891 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 2744 (2019), *cert. denied*, 139 S. Ct. 2767 (2019) ("[Law] therefore falls into the category of state labor laws typically saved from preemption, and so the presumption against preemption applies with particular force.").

Ordinance's protections prevent any meaningful bargaining and the Ordinance dictates bargaining results to such a degree that it conflicts with the NLRA.

CGA's argument relies on an overly broad interpretation of the Ordinance. As this Court previously noted, "[i]f the drafters . . . meant to prohibit employers from offsetting labor costs by lowering any form of compensation 'in any way' . . . they could have said so in the Ordinance." (Order Den. Prelim. Inj. 8.) Additionally, while the term "compensation" is not defined, the Ordinance does provide contextual clues suggesting a narrower interpretation. Within the definition of "adverse action," a term which is mysteriously absent elsewhere despite deserving definition, "compensation" appears at the forefront of a list of typically bargained-for items, including gratuities, access to work, incentives, bonuses, and more. (*See* Ordinance § 5.91.020.) Additionally, within the listed remedies for Ordinance violations, there are multiple mentions of "unpaid compensation" which suggest a synonymous reading as "unpaid wages. (*Id.* § 5.91.110.) The Ordinance also requires the retention of compliance records, suggesting other bargained-for terms can be reduced for other reasons. (*See id.* § 5.91.080.) As such, the Court finds the Ordinance is not subject to CGA's broad interpretation and allows labor negotiations to proceed with the Ordinance as a backdrop.

CGA also argues that the Ordinance dictates bargaining results, in similar fashion to the law at issue in *Bragdon*, 64 F.3d 497 (9th Cir. 1995), but this overstates the Ordinance's substantive requirements. The law at issue in *Bragdon* required employers to pay "prevailing wages [that] were defined as the per diem wages set by the state for public works projects, which in turn were based on the wages in local collective bargaining agreements, effectively forcing nonunion employers to pay what amounted to a union wage." *Am. Hotel*, 834 F.3d at 965 n.5. The *Bragdon* court found those substantive requirements to be so "invasive and detailed" that it "substitute[d] the free-play of political

forces for the free-play of economic forces that was intended by the NLRA." *Bragdon*, 64 F.3d at 502, 504. The Ordinance does not share that quality because, unlike *Bragdon*, it still allows for bargaining to occur so long as employers do not undercut the premium pay benefit by reducing compensation or limiting earning capacity. Instead, the Ordinance more closely resembles the law at issue in *National Broadcasting Co., Inc. v. Bradshaw*, 70 F.3d 69, 71 (9th Cir. 1995), which established an overtime minimum benefit protection. Like the Ordinance here, the *National Broadcasting* law allowed for the parties to negotiate a different premium pay rate but required that rate to be at least one dollar above the minimum wage. *Id.* As such, the principles guiding *Bragdon* are too far afield to be applicable here.

As the NLRA does not preempt the Ordinance, CGA's first cause of action is **DISMISSED**.

## B. The Contract Clause

CGA claims the Ordinance violates the Contract Clause because it substantially impairs existing collective bargaining agreements and does not serve a significant or legitimate public purpose. (Opp'n 13–15.) Defendants argue the Ordinance represents foreseeable state regulation and a valid use of police powers, and that giving grocery workers premium pay furthers a significant and legitimate public purpose. (City Mot. 16–20; UFCW324 Mot. 17–21.)

The Contract Clause "does not prevent the [city] from exercising such powers as are vested in it for the promotion of the common weal, or are necessary for the general good of the public, though contracts previously entered into between individuals may thereby be affected." *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 241 (1978). There are three steps for assessing alleged Contract Clause violations: *first*, whether the law causes a substantial impairment of a contractual relationship, with more severe or unforeseeable impairments receiving heightened scrutiny; *second*, whether the city can provide a significant and legitimate public

purpose as justification, to guarantee the city is properly exercising its police power rather than serving special interests; and *third*, whether adjusting the contractual rights and responsibilities of private parties is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the legislation's adoption. *Energy Rsrvs. Grp., Inc. v. Kan. Power & Light Co.*, 459 U.S. 400, 411–12 (1983).

CGA fails to establish a Contracts Clause violation. CGA cannot hurdle even the first step, which has three subcomponents: "whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial." *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992). The test for a contractual relationship asks more than whether there was a contract, instead asking whether there exists a "contractual agreement regarding the specific . . . terms allegedly at issue." *Id.* at 187. Here, CGA merely argues that it "pleads adequate facts demonstrating that its members have existing collective bargaining agreements with employees governing crucial terms, such as the employees' wages." (Opp'n 13.) It is not clear to the Court that the Ordinance affected those 'crucial terms.' *See, e.g.*, *Gen. Motors Corp.*, 503 U.S. at 190 ("The parties still have the same ability to enforce the bargained-for terms of the employment contracts that they did before the . . . statute was enacted.").

Even assuming there is a specific term that the Ordinance impairs, CGA fails to show any substantial impairment or disprove any legitimate purpose. While CGA need not show "[t]otal destruction of contractual expectations" to prove the City violated the Contracts Clause, the law recognizes that prior industry regulation and "regulation that restricts a party to gains it reasonably expected from the contract does not necessarily constitute a substantial impairment." *Energy Rsrvs. Grp.*, 459 U.S. at 411. Other minimum labor standards impact the grocery industry and the parties could have foreseen additional regulation; the "premium pay" the Ordinance requires is not so dissimilar from other mandated benefits that it necessarily creates a substantial impairment. Further, the Ordinance is a valid exercise of the police powers

to serve a significant and legitimate public purpose. *See U.S. Tr. Co. of N.Y. v. New Jersey*, 431 U.S. 1, 22–23 (1977) ("As is customary in reviewing economic and social regulation, however, courts properly defer to legislative judgment as to the necessity and reasonableness of a particular measure."). The pandemic thrust grocers into an essential and hazardous position, and the City designed the Ordinance to "protect[] public health, support[] stable incomes, and promote[] job retention." (Ordinance Preamble 3–4.) As such, the Court finds that CGA's Contract Clause claims fail.

Based on the foregoing, CGA's fourth and fifth causes of action for violation of the Contract Clause of the United States and California Constitutions are **DISMISSED**.

### C. The Equal Protection Clause

CGA argues the Ordinance violates the Equal Protection Clause because it burdens fundamental rights, cannot pass strict scrutiny, and has no rational basis. (Opp'n 15–19.) Defendants contend the Ordinance is an economic regulation that easily passes rational basis review, and that strict scrutiny does not apply. (City Mot. 20–25; UFCW324 Mot. 21–25.)

"The Equal Protection Clause directs that 'all persons similarly circumstanced shall be treated alike.'" *Plyler v. Doe*, 457 U.S. 202, 216 (1982) (quoting *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920)). Courts apply one of three levels of scrutiny in assessing alleged equal protection clause violations: strict scrutiny, intermediate scrutiny, or rational basis review. *Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 543 (9th Cir. 2004). Here, CGA contends strict scrutiny applies because the Ordinance interferes with a fundamental right, specifically the right to contract under the Contract Clause. However, "courts have routinely applied rational basis review to regulations implicating economic relationships and, by extension, contracts." *Nw. Grocery Ass'n v. City of Seattle*, No. C21-0142-JCC, --- F. Supp. 3d. ---, 2021 WL 1055994, at *6 (W.D. Wash. Mar. 18, 2021) (collecting cases), *appeal filed*, No. 21-35205 (9th Cir. Mar. 19, 2021). If the Court were to adopt CGA's

position that the Contract Clause is a fundamental right, subject to heightened protection under the Equal Protection Clause, the Court would have to discard nearly ninety years of precedent running counter to the idea of "freedom to contract." *See W. Coast Hotel Co. v. Parrish*, 300 U.S. 379, 391–93 (1937) ("The Constitution does not speak of freedom of contract. . . . This power under the Constitution to restrict freedom of contract has had many illustrations. That it may be exercised in the public interest with respect to contracts between employer and employee is undeniable." (footnote omitted)). As such, the Court must analyze the Ordinance under rational basis review.

Under rational basis review, the Court affords the Ordinance "a strong presumption of validity, and those attacking the rationality of the legislative classification have the burden to negative every conceivable basis which might support it." *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 314–15 (1993) (internal quotation marks and citations omitted). This means that "[w]here there are plausible reasons for legislative action, our inquiry is at an end." *Nw. Grocery Ass'n*, --- F. Supp. 3d. ---, 2021 WL 1055994, at *6 (quoting *RUI One Corp.*, 371 F.3d at 1154) (internal quotation marks and brackets omitted). Here, CGA cannot show no plausible reason exists. CGA recognizes the Ordinance's "purported purposes" are to "protect and promote the public health, safety, and welfare" but argues it fails to accomplish any of those goals. (Opp'n 19 (quoting Ordinance § 5.91.005).) CGA ignores that the Ordinance states, mere sentences later, that "[g]rocery workers face magnified risks of catching or spreading the COVID-19 disease because . . . their work involves close contact with the public" and "[t]he provision of premium pay better ensures the retention of these essential workers . . . who are needed throughout the duration of the COVID-19 emergency." (Ordinance § 5.91.005.) In this way, the Ordinance not only benefits grocery workers but also benefits the public, enabling society to continue relying on their essential services. As such, the Ordinance survives rational basis review and does not violate the Equal Protection Clause.

Based on the foregoing, CGA's second and third causes of action for violation of the Equal Protection Clause of the United States and California Constitutions are **DISMISSED**.

## V.   CONCLUSION

For the reasons stated above, Defendants' Motions to Dismiss are **GRANTED**. (ECF No. 51; ECF No. 52.)  As the Court finds that any amendment would be futile, CGA's claims are **DISMISSED WITH PREJUDICE**.  The Court will issue Judgment.

**IT IS SO ORDERED.**

August 9, 2021

_____

**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**